Good morning, Your Honors. Good morning, Counsel. May it please the Court, my name is George Herides. I'm appearing on behalf of the Pratap family, who are the petitioners in this case. The petitioners are appealing the agency's decision denying their claims for asylum withholding of removal and cat relief, pursuant to an adverse credibility finding of the lead petitioner's testimony. The Board of Immigration Appeals affirmed the IJ's decision, citing two grounds in support of the IJ's decision denying on credibility grounds. The first ground was what the BIA referred to as an inconsistency, an internal inconsistency in the lead petitioner's testimony regarding the exact date of the expiration of the family lease. Petitioners argue that there is no inconsistency on the record. On page 190 of the administrative record, the lead petitioner was asked about when the lease was supposed to expire, and then asked on page 247 of the record when the lease actually expired. These are two different questions, and therefore there can be no inconsistency when she provided two different answers. She provides an answer to the first question that, to the best of her ability, she believed that the lease was supposed to expire. But she said August of 99. However, when she was asked later in the record when the lease actually expired, she replied that she was not sure. You would also argue, would you not, that that's a pretty minor discrepancy in any event and hardly relevant to this case? Yes, Your Honor. I could go further if the Court requires. Okay. What about the other date, the date of the rape? That's more significant, is it not? Yes, Your Honor. She was internally consistent throughout her hearing about the actual date of that hearing, of that event. The only inconsistency that is alleged in the record is the inconsistency between her court testimony and statements she allegedly made at the asylum interview. Now, when we look at the asylum interview, there are a myriad of reasons why it should not, that the agency should not have relied on the asylum officer's assessment to refer and the notes submitted in support of that assessment. Number one, the asylum interview's own testimony admits that it's not an exact transcript, therefore begging the question, how inexact is it? Furthermore, the notes submitted in support of his own assessment to refer does not indicate what language the interview was conducted in, does not indicate that the lead petitioner signed those notes or otherwise was able to have an opportunity to attest to the accuracy of those notes. The asylum officer admitted that he did not read those notes back to the lead petitioner and he intimated on pages 225 to 226 of the record that he only does so in certain cases involving terrorism. But petitioners argue that pursuant to 8 CFR 208.9D, that an asylum applicant should be given an opportunity to make a statement about the accuracy of the notes and evidence presented at the interview. Pursuant to all these reasons. The evidence, as I see it in this particular finding, is that if it was April of 1998, that would indicate that the family stayed in Fiji without being harmed for another year and four months, whereas if it was January of 1999, it would only be seven months. In her court testimony, she testified that there was a burglar on April of 1998 and then the actual physical harm that she suffered and her daughter suffered occurred in January of 1999. Now, petitioners argue, first of all, that the asylum officer's assessment to refer and the notes submitted in support of that assessment is per se unreliable, pursuant to Jarnail Singh v. Gonzalez, which is an additional citation we provide to this court. However, even if the court finds that the notes and the assessment are not per se unreliable, still looking at the notes themselves, we can see on page 259 of the record how confusing they are to read to somebody who wasn't at the interview. This is not an exact transcript. If we look on page 259, he says the asylum interviewer asked, When did that happen, referring to the burglary of April 1998? To which she replied, April 1998. He asked then, Did they hurt you? She replied, Not hurt. April 11th, they stole some stuff, jewelry and damage to the furniture and left. Asked them again. The interviewer asked her again, Hurt you? Whatever, I don't know if that's a complete question, Your Honor, but it's not indicated by the notes if it's a complete question. And she replied, Bottle to leg, and they tried to rape me. It appears just by reading this, although we cannot really confirm based on what's before us, that the interviewer and the lead petitioner are talking about two different events. It's not exactly borne out in the record the confusion that happened here, and that's one of the reasons why these notes are so unreliable and the way an asylum interview is conducted is so unreliable. They are informal proceedings. They are quasi-prosecutorial, and there are aspects of it that are not official, and that's explained in Jarnail Singh v. Gonzales about the impetus for creating a complete transcript that's taken away from the asylum interviewer pursuant to new regulations that have passed in the recent years. I would like to reserve the rest of my time, if I may, at this point to address. Do you want to say anything about the bottle incident? Once again, that's the inconsistency between her testimony in the court and the asylum office interview, and the petitioner reiterates that the asylum officer's notes in his assessment are not reliable, pursuant to his own testimony, but has not even an exact transcript. All right. Thank you. Yes, you may reserve your time. We'll hear from the government. Your Honor's counsel, good morning. My name is Margaret K. Taylor. I represent the government in this matter. The only question before the Court is whether the Court is compelled to make a credibility finding different from the immigration judges. In light of the discussion with Petitioner's counsel, I'd like to jump right to the reliability of the immigration judge's reliance on the asylum officer's assessment to refer in questions and answers, because that seems to be of interest to the Court. Opposing counsel sent a 28-J letter regarding the case Cingvi-Gonzalez, 403 Fed 3rd, 1081. In that case, which was published after the briefs were submitted in this case, the Court set out several criteria for evaluating reliance on asylum office, immigration judge's reliance on asylum officer documents. First of all, in that case, the Court said, criticized the asylum officer assessment to refer in Qs and As in that case, because the asylum officer had not administered an oath. In this case, the asylum officer did administer an oath. Second of all, in Cing, the Court criticized the asylum officer reliability, because there was no evidence that the asylum applicant had an opportunity to comment on the evidence at the end of the interview. In this case, at the end of the interview, the asylum officer said, do you have any more questions or do you have any more comments on what we've discussed? So indeed, Ms. Pratap did have an opportunity to comment on what had taken place before the asylum officer, and she said, no, I have nothing further. As for language interpretation, another problem in the Cing case, which does not occur here contrary to what my opposing counsel just said, his office went with Ms. Pratap, sent a language interpreter, and so that asylum officer interview was indeed interpreted into her language and it was as reliable as this attorney's office is. Furthermore, in Cing, the asylum officer documents were criticized because they were handwritten rather than typed. Here we have questions and answers that were typed. Furthermore, the assessment to refer and the question and answers were created contemporaneously. They were done at the same time. So whatever confusion there may appear in the question and answers, those are straightened out in the contemporaneously written assessments to refer. So there was absolutely no problem with the immigration judge's reliance on the asylum officer documents. Pursuant to 8 CFR section 1240.7, an immigration judge may rely on prior evidence in the record. It says specifically use of prior statements. The immigration judge may receive in evidence any oral or written statement that is material and relevant to any issue in the case previously made by a respondent. And in this case, what was previously made by the respondent, which was, you know, the procedure was perfect, was before the asylum officer and the immigration judge had every right to rely on that evidence in the record and did so in a procedurally sound way. Why is the date of the rape material? Well, the dates are material. Consistency in terms of when this occurred, right? There are two fundamental factual allegations in this case. First of all, the leasehold and the rape, or the attempted rape, the alleged attempted rape. Well, the leasehold is pretty incidental and pretty minor, isn't it? It's not crucial to his case. Well, the rape issue may be more significant. Well, Your Honor, I'm not sure that I see that the same way, but let me answer your question about the rape and then possibly counter your view on the leasehold significance. The date of the rape or the attempted rape is significant because we don't know when it happened, and so we don't know why this family stayed in the country for as long as they did. For example, if it happened in April of 1998, and this was the trigger for the family leaving the country, they didn't leave until August of 1999. Yes, that's right. So, I mean, just the way that the substance of the incident is not consistently pled. Now, the reason that the lease dates are important, and there's a factual piece of this I'd like to correct, too. In the record, we have four different lease expiration dates. We have 4-1998 before the asylum officer, August 1999 at the immigration judge hearing, December 1999, also before the asylum officer, and then according to the brother's will and the solicitor general's cover memo, we have something past January 28, 2000. So we have four different dates. And the reason that the leasehold dates are important and have to be considered in conjunction with the incident, whatever that incident was, whether it was attempted rape, broken glass, or something else, is because those two factual allegations, the way they're pled, hang together. Ms. Pratop claimed that the reason that the assault occurred was because the ethnic Fijians wanted to take away the lease from the family, and that was on account of their ethnicity. Absent the leasehold issue, we have an allegation of a rape with no on account of. So if those two facts are not considered in tandem, then there is no asylum claim whatsoever. Well, there's testimony also that they've returned nine or ten times with threats and that. There is testimony that the incident occurred only once and only in 1998. There is testimony that the landlord came back so many times that she lost count. There's testimony that the landlord came back eight or nine times. So there's no consistent testimony. There's no consistent testimony as to how many times the landlord came to the property. Well, nine or ten times or eight or nine times, is that? Oh, I think it's eight or nine. I don't know about nine or ten. There's testimony that they came once. And testimony that came back a number of times. Right. Too many to count, or nine or ten, or once. Yeah, well, suppose it's just eight. That's a lot. That's... To have an attempted rape and then come back at least eight times with threats would be just more than that one incident. Well, if that version were true, that would be a lot. But the issue really before the Court is whether the immigration judge was compelled to believe the eight or nine times or the testimony about one time, whether there's sufficient evidence in the record that it would be unreasonable for the immigration court, for the immigration judge to... What was the basis for not believing it? Well, the basis for not believing it is because there were a number of different versions. The basis for not believing it, the immigration judge relied... A number of different versions or a number of different dates? There were a number of different versions as to substance. The immigration judge decision points out a number of different dates. And, oh, there's one other point I'd like to make to clarify, really. The decision, the fact-finding that is on review before the Court is not the Board's decision, but the immigration judge's decision. Because pursuant to 8 CFR 1003.1 D3I, the Board does not have de novo review of facts in this case, because it was appealed after September 25, 2002. Thank you, counsel. Your time has expired. We'll hear now from Mr. Herides. You have some reserve time. All right. We ask that you deny the petition for review. Thank you. Thank you, Your Honor. Your Honor, the identity of the petitioners is not in dispute in this case, nor is it in dispute of the discrimination of Indo-Fijians that is constitutionally sanctioned by the Fijian government. The lead petitioner's testimony in this matter was unequivocal, consistent at her hearing, and fully described the mistreatment that she and her family suffered in April of 1998 and January 1999. The government's argument is that the asylum officer's notes and assessments to refer are not unreliable per se, pursuant to Jarnail Singh v. Gonzales. However, petitioners dispute that finding and, in any event, states that that's not the end of the question. This Court must still look at the asylum officer's notes and his assessments to refer to see if they are reliable on their face. Petitioner refers to page 256 of the record in which the asylum officer's assessments to refer misstates the nationality of the petitioner. It says that she fears she'll be harmed by her former landlord and native Indonesians, and this is a minor error. The next sentence misstates her occupation. This is also a minor error. However, if we look at the totality of the assessments to refer with the notes, what other errors are there? She stated on the record at her hearing that she did not make the misstatements that the asylum officer's notes and assessments to refer allege. She testified that she told the asylum officer about the two incidents that she and her family had encountered with native Fijians. Furthermore, in reference to the lease, petitioners assert that the lead petitioner's testimony is clear. She did not know when the lease was obtained by her family. She did not know when exactly it expired. She did not know these things because she did not obtain the lease. This was her brother-in-law's lease. She only had secondhand knowledge of this lease. In fact, she even testified that her husband went to the board in Fiji to pay an extension. Therefore, any uncertainty she may have had about the lease should not be held against her. Furthermore, the motivation behind the attacks she and her family suffered was not the expiration of the lease. It's the fact that she and her family are Indo-Fijians. The expiration of the lease is simply a pretext for the persecution they suffered. The lead petitioner testified credibly on the record that she was almost raped by native Fijians, that she and her daughter were beaten to the point of bleeding, that her foot was cut by a bottle, that it just missed her head. Her testimony is credible, and she should have had an opportunity to pursue asylum on behalf of herself and her family on the merits. And therefore, petitioners argue that the credibility finding is not supported by substantial evidence and implores this Court to remand this matter for further adjudication for asylum and withholding claims. Her claim is not government discrimination, so what is the basis for the discrimination claim? It would be pursuant to groups that the Fijian government are unable to control or unwilling to protect the petitioners from... Yes, there is. It's on the record, Your Honor, and the agency has not adjudicated that issue. The only issue before this Court is credibility. To conclude, to the extent that the Respondent's Brief asks this Court for a remand for Kat, petitioners do not oppose that request by the government in the event that the Court does not remand for asylum or withholding. Thank you very much. Thank you, Counsel. The case just argued will be submitted for decision, and we will hear argument in Ran v. Gonzalez.
judges: Goodwin, Hug, O'Scannlain